UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEREMY DALE O.,[1] | |
| Plaintiff, | Case No. 1:23-cv-00072-DKG |
| v. | **MEMORANDUM DECISION AND ORDER** |
| MARTIN J. O'MALLEY, Commissioner of Social Security Administration,[2] | |
| Defendant. | |

**INTRODUCTION**

Plaintiff filed a Complaint for judicial review of the Commissioner's denial of his application for a period of disability and disability insurance benefits. (Dkt. 1). Having reviewed the Complaint, the parties' memoranda, and the administrative record (AR), the Court will remand this matter to the Commissioner for further proceedings for the reasons set forth below.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Martin J. O'Malley became the Commissioner of Social Security Administration on December 20, 2023. Fed. R. Civ. P. 25(d).

**MEMORANDUM DECISION AND ORDER - 1**

**BACKGROUND**

On August 8, 2018, Plaintiff protectively filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of January 11, 2017. (AR 13). Plaintiff's application was denied upon initial review and on reconsideration. (AR 13). A hearing was conducted by Administrative Law Judge (ALJ) Christopher Inama on January 22, 2020, at which the ALJ heard testimony from Plaintiff and a vocational expert. (AR 13).

On February 5, 2020, ALJ Inama issued a written decision finding Plaintiff was not under a disability from January 11, 2017, through the date of the decision, and therefore determined Plaintiff was not disabled. (AR 13-26). Plaintiff timely requested review by the Appeals Council, which denied his request on June 15, 2020. Thereafter, Plaintiff sought judicial review, which resulted in the Court remanding the case for further administrative proceedings on December 1, 2021. (AR 1373-1406).

On remand, ALJ David Willis conducted a hearing on October 12, 2022. (AR 1293, 1317-54).[3] After considering testimony from Plaintiff and a vocational expert, ALJ Willis issued a written decision on December 7, 2022 finding Plaintiff not disabled. (AR 1293-1310). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Plaintiff timely filed this action seeking

---

[3] The hearing was held by remote means due to the Coronavirus Pandemic of 2019. (AR 1293). Plaintiff and his attorney participated by online video and the vocational expert participated by telephone.

judicial review of ALJ Willis' decision. (Dkt. 1). The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

At the time of the alleged disability onset date of January 11, 2017, Plaintiff was thirty-eight years of age. (AR 1308). Plaintiff is a high school graduate and worked as an aviation mechanic and as an aviation production controller in the United States Marine Corps until his discharge from military service for medical reasons in 2016. (AR 42, 44, 45, 1308, 1325). The ALJ determined Plaintiff has past relevant work experience as a production coordinator and airframe mechanic. (AR 1307-08). Plaintiff claims disability due to physical and mental impairments, including: post-traumatic stress disorder (PTSD), bilateral carpal tunnel syndrome, cervical degenerative disc disease, thoracolumbar degenerative disc disease, bilateral lower extremity radiculopathy, and adjustment disorder with anxiety. (Dkt. 13 at 1) (citing AR 72-82).

## THE ALJ'S DECISION

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Here, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 1296). At step two, the ALJ determined

Plaintiff suffers from the following medically determinable severe impairments: status-post L5-S1 fusion, left shoulder tendinopathy, and status-post SLAP tear repair of the right shoulder. (AR 1296). The ALJ concluded Plaintiff's obesity, tinnitus, irritable bowel syndrome, and left knee impairment, were not severe medically determinable impairments. (AR 1296-97).

At step three, the ALJ determined that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 1297-98). The ALJ next found Plaintiff retained the Residual Functional Capacity (RFC) for sedentary work with the following limitations:

> lift, carry, push, and pull up to 10 pounds occasionally and less than 10 pounds frequently. He can stand and/or walk for two hours in an eight-hour workday. He can sit for six hours in an eight-hour workday. The claimant can occasionally reach overhead with the bilateral upper extremities but can frequently reach laterally and forward with the bilateral upper extremities. He can frequently handle and finger with the bilateral upper extremities. The claimant can occasionally climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, or crawl. The claimant must avoid concentrated exposure to extreme cold and vibrations. He must avoid all exposure to unprotected heights or moving mechanical parts. The claimant will be off task for up to 5% of an eight-hour workday and be absent from work up to one day per work month. The claimant is limited to simple repetitive routine tasks. He can make simple work-related decisions involving judgment or dealing with changes in the routine work setting.

(AR 1300).

At step four, the ALJ found Plaintiff unable to perform any past relevant and, therefore, proceeded to step five. (AR 1307-08). Relying upon the vocational expert, the ALJ found that other jobs exist in significant numbers in the national economy that

**MEMORANDUM DECISION AND ORDER - 4**

Plaintiff can perform given his age, education, work experience, and RFC, such as: addressing clerk, final assembler, and telephone information clerk. (AR 1309). The ALJ therefore determined Plaintiff was not disabled from January 11, 2017 through December 7, 2022. (AR 1310).

## ISSUES FOR REVIEW

1. Whether the ALJ properly evaluated Plaintiff's subjective symptom statements.

2. Whether the ALJ properly considered the nonmedical source statements.

3. Whether the ALJ properly evaluated the medical opinion evidence.

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id*. The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have

concluded. *Id*. at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id*. The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The Court will not reverse the ALJ's decision if it is based on harmless error, which exists where the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal marks and citations omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1117–1122 (9th Cir. 2012).

## DISCUSSION

**1.     Subjective Symptom Statements**

Plaintiff argues the ALJ failed to provide clear and convincing reasons to disregard his subjective symptom statements. (Dkt. 13, 18). Defendant maintains the ALJ reasonably evaluated Plaintiff's subjective symptom complaints. (Dkt. 15).

### A.  Legal Standard

Where the record contains objective medical evidence "establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of

which [s]he complains" and there has not been an affirmative finding of malingering, as is the case here, a claimant's subjective symptom testimony may only be rejected for clear and convincing reasons. *Carmickle*, 533 F.3d at 1160. The clear and convincing standard does not require this Court to be convinced, but instead asks "whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

### B. Plaintiff's Statements and ALJ's Decision

Plaintiff completed a functional report dated October 7, 2018, reporting pain in his lower back, knees, shoulders, and wrists, which prevented him from lifting, sitting, and standing for more than ten minutes, and overhead lifting; using a computer; and performing repetitive tasks. (AR 267-274). The report states Plaintiff required access to a restroom due to irritable bowel syndrome. Plaintiff's daily activities included making simple meals, watching television, walking, seeing kids off to school, shopping, playing games on his phone, helping kids with homework, and sometimes feeding the dogs. Plaintiff stated having difficulty with sleeping and that he was no longer able to work out at the gym or perform vehicle maintenance, but that he was able to perform personal care, use a riding lawn mower, and do simple cleaning. Plaintiff reported some trouble remembering appointments, completing tasks, concentration, and used alarms to remind him to take medications. His hobbies included reading, remote controlled cars, television,

and occasionally fishing. Plaintiff reported to using a cane and a brace for his knee and wrist, but stated that he "rarely use them anymore." (AR 273).[4]

During the hearings, Plaintiff testified to experiencing pain in his lower back, shoulders, knees, and wrists/hands; and needing frequent access to a restroom. (AR 42-62, 1339-1353). Plaintiff stated he can do some housework and other tasks that do not involve bending, prolonged standing, sitting, squatting, reaching, or lifting. Plaintiff testified to having difficulty sleeping, with crowds, and swallowing.

After summarizing Plaintiff's functional report and testimony, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 1301-04). The ALJ concluded that the objective medical evidence did not fully support Plaintiff's subjective allegations; and

---

[4] The ALJ characterized Plaintiff's statements concerning the use of an assistive device as stating he was able to "walk without the use of an assistive device." (AR 1301). The Court finds the ALJ's summary of Plaintiff's October 2018 functional statement to be accurate. (AR 273). However, the ALJ did not mention Plaintiff's hearing testimony on October 12, 2022 reflecting Plaintiff walked today using a cane, which was not prescribed, because the pain in his low back causes him to lose strength in his right leg and he is a fall risk. (AR 1339-40). Nevertheless, the ALJ addressed Plaintiff's use of a cane elsewhere in the written decision - noting Plaintiff appeared at mental status examination with Dr. Levitt in November 29, 2017 ambulating with a cane (AR 732, 1301), but found Dr. Sant's December 1, 2017 opinion that Plaintiff occasionally needed to use a cane unpersuasive because "the medical record is devoid of the claimant presenting himself to medical providers ambulating with the use of an assistive device after 2017." (AR 741, 1306). Records dated after 2017 are inconsistent concerning Plaintiff's use of a cane. (AR 1224) (April 2018 medical record stating "patient is able to walk unassisted with normal gait."); (AR 1208-09, 1214-15) (February 2019 medical record concerning right sacroiliac pain, stating "patient does not use an assistive device" and also "patient uses an aid for ambulation, cane."); (AR 1186, 1198, 1204, 1590) (post-2017 medical records reporting plaintiff does not use an assistive device or walks independently). The ALJ is tasked with resolving conflicts in the record, which the ALJ did here and the Court will not overturn unless it is unsupported by substantial evidence.

**MEMORANDUM DECISION AND ORDER - 8**

that the combination of normal physical examination findings following Plaintiff's spine and shoulder surgeries, activities of daily living, and lack of treatment between January and July of 2022, lent more support to the claimant's ability to engage in sedentary work. (AR 1302-04).

## C.  Analysis

The ALJ identified three clear reasons for discrediting Plaintiff's symptom statements: (1) the normal physical examination findings; (2) activities of daily living; and (3) lack of treatment between January 2022 and July 2022. (AR 1301-1304). Plaintiff contests the first and second reasons.[5] As to the first, Plaintiff argues the ALJ failed to explain how his subjective symptom statements were inconsistent with the normal physical examination findings cited in the decision. As to the second, Plaintiff contends the ALJ erred in discrediting his symptom statements based on his daily living activities by failing to put his activities into context. The Court will address each in turn below.

### i.  Normal Physical Examination Findings

Citing to several medical records containing normal physical examination findings relevant to Plaintiff's lumbar spine, right shoulder, and bilateral hands, the ALJ

---

[5] Plaintiff does not clearly contest the ALJ's conclusion that Plaintiff's symptom statements are undermined by the lack of treatment between January 2022 and July 2022. Plaintiff has therefore waived any assignment of error on that point. *Carmickle*, 533 F.3d at 1161, n. 2. Nevertheless, the ALJ did not err in discrediting Plaintiff's statements on this basis, because no records show Plaintiff sought medical treatment for any of his physical impairments during the six months immediately following the first judicial remand. Lack of medical treatment is a valid clear and convincing reason to reject a claimant's statements concerning the severity of their symptoms. 20 C.F.R. § 404.1529(c)(3)(iv)-(v); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (The ALJ may discount Plaintiff's subjective complaints because of unexplained or inadequately explained failure to seek treatment). Therefore, this was a clear and convincing reason for rejecting Plaintiff's symptom statements.

discounted Plaintiff's allegations that he is unable to lift more than ten pounds, squat, bend, walk or sit for any period of time, reach on all planes, and physically function at more than eighty-five percent. (AR 1302). Plaintiff argues the ALJ failed to explain his reasoning, did not connect the records cited to Plaintiff's testimony, and that the records relied on by the ALJ do not support the decision to reject Plaintiff's symptom statements. (Dkt. 13 at 16-18); (Dkt. 18 at 5-7).

Having carefully reviewed the records cited by the ALJ, with particular focus on the records contested by Plaintiff (AR 1057-1061, 1196-1198, 1268), the Court finds the ALJ's decision is supported by substantial evidence. Contrary to Plaintiff's contentions, the ALJ identified the testimony found to be discredited, and "link[ed] that testimony to the particular parts of the record supporting [the] non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. The ALJ rejected Plaintiff's subjective allegations concerning inability to perform all work activity at the sedentary level due to pain in his back, leg, shoulders, wrists, and hands. (AR 1301-03). While acknowledging there are records lending some support to Plaintiff's complaints, the ALJ provided a detailed explanation for concluding that the combination of normal post-surgical physical examination findings, activities of daily living, and lack of treatment support the conclusion that Plaintiff was able to engage in sedentary level work. (AR 1301-03). In doing so, the ALJ identified and discussed specific records and evidence that support his decision.

The post-surgical records cited in the decision contain mostly normal physical examination findings supporting the ALJ's conclusion that Plaintiff is able to engage in sedentary level work. While the records show Plaintiff received treatments for pain, the

**MEMORANDUM DECISION AND ORDER - 10**

overall longitudinal records cited by the ALJ reflect that Plaintiff experienced improvement in his pain level with treatment, was more functional and active following treatment, and did not use an assistive device to walk. (AR 1057-61, 1196-98, 1211-16, 1224, 1256-577, 1268, 1278). Indeed, there are no records of Plaintiff seeking medical treatment for any of his physical impairments between January 2022 and July 2022. Thus, the ALJ reasonably concluded that Plaintiff's complaints that he was physically unable to lift, squat, bend, walk, sit, reach, and physically function at more than eighty-five percent was contradicted by the several records reporting mostly normal physical examination findings – particularly when combined with Plaintiff's daily activities and lack of treatment. The ALJ did not improperly pick and choose records, while avoiding others. Nor did the ALJ fail to explain his reasoning.

Plaintiff's arguments to the contrary present a different view of the record, but do not demonstrate harmful error. (Dkt. 13 at 16-17; Dkt. 18). The mere fact that further treatments or physical therapy were recommended by providers does not necessarily render a person disabled – particularly where, as here, the claimant's symptoms improved, he had normal physical exam findings, and he was able to go for several months without treatment. The ALJ explained his reasoning concerning the normal physical examination findings, which the Court finds was clear, convincing, and supported by substantial evidence.

### ii.    Daily Activities

The ALJ concluded that Plaintiff's activities of daily living following his surgeries were inconsistent with assigning physical limitations greater than sedentary level work as

stated in the RFC. (AR 1302-03). Specifically, the ALJ found Plaintiff "engaged in a broad range of activities of daily living requiring extensive use of his lower back and bilateral extremities during the period at issue." (AR 1302). The Court finds this was a clear and convincing reason for the ALJ to find Plaintiff's symptom statements were not fully supported. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination.").

The ALJ made a specific finding - that Plaintiff's daily activities included "extensive use of his lower back and bilateral extremities" – and identified particular activities supporting that finding. (AR 1302). The ALJ cited records demonstrating Plaintiff engaged in activities, including: walking "pretty far," working around the house, painting his house, pulling a dolly with a heavy barrel, and jumping and swimming in a river. (AR 1302-03) (citing AR 272, 1113, 1590, 1667, 1720). These activities plainly contradict Plaintiff's statements of debilitating pain in his lower back and extremities and, thus, support the ALJ's decision.[6] The ALJ's explanation and interpretation of these activities was rational and well-supported by the record. Plaintiff's differing view of the

---

[6] Some of the other listed activities appear less supportive of the ALJ's decision, because Plaintiff qualified his ability to engage in those activities. *See e.g.*, (AR 1216) (working in his shop aggravated pain symptoms); (AR 1612) (most bothersome pain is when he is trying to rake); (AR 1741) (patient injured right shoulder while lifting overhead when remodeling a shower). The evidence in the record of daily activities is somewhat inconsistent. It is the ALJ's role to resolve conflicts in the record, which the ALJ did here. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("We leave to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."). The Court must uphold rational interpretation of conflicting evidence. *Carmickle*, 533 F.3d at 1165. Regardless, any error in the ALJ's findings concerning daily activities was harmless because the ALJ gave other valid clear and convincing reasons for discrediting Plaintiff's statements, which are supported by substantial evidence. *Id.* at 1162–63.

record and arguments to the contrary do not establish a basis for remand. (Dkt. 18 at 7-8) (arguing the ALJ failed to put these activities into context and merely recited a list of activities). In contrast to Plaintiff's assertions relying on the prior judicial remand, the ALJ here did more than merely recite a list of activities. (AR 1302). Rather, the ALJ made specific findings, explained his reasoning, and pointed to particular records that support his decision. The Court finds the ALJ's reasoning and conclusion on this point was clear, convincing, and supported by substantial evidence, particularly given many of the activities identified by the ALJ are contained in the more recent medical evidence.

Plaintiff specifically contests the ALJ's reliance on two types of activities: 1) when Plaintiff moved his family between states, and 2) performing simple daily tasks such as preparing meals, caring for children, playing games on his phone, driving, and fishing. (Dkt. 13 at 18). Generally speaking, these types of activities – moving residences and simple household tasks - are not, on their own, necessarily indicative of transferrable work skills or contradictory of a claimant's testimony. Any error in this regard by the ALJ here was harmless because the ALJ identified several other more recent activities which clearly and convincingly support the ALJ's reasoning for discounting Plaintiff's statements.

Further, the ALJ provided other clear and convincing reasons for concluding Plaintiff's statements were not fully supported – namely, normal physical exam findings and lack of treatment, as discussed above. *See Carmickle*, 533 F.3d at 1162–63; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the

error was harmless where ALJ provided other valid bases for credibility determination). Accordingly, the Court finds the ALJ did not commit harmful legal error in evaluating Plaintiff's symptom statements.

## 2.   Nonmedical Source Statements

Plaintiff argues the ALJ erred by failing to provide a germane reason for disregarding the nonmedical source statements. (Dkt. 13, 18). Defendant asserts that the ALJ reasonably considered the statements. (Dkt. 15).

The parties have framed an issue that is unsettled in the Ninth Circuit. *See Stephens v. Kijakazi*, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023) ("We have not yet addressed whether under the new regulations an ALJ is still required to provide germane reasons for discounting lay witnesses."); *Fryer v. Kijakazi*, 2022 WL 17958630, at *3 n. 1 (9th Cir. Dec. 27, 2022) ("it is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear that they are no longer required to articulate it in their decisions.").

The 2017 Regulations revised the language relating to how ALJs must consider nonmedical evidence, stating: "[w]e are not required to articulate how we considered evidence from nonmedical sources using the requirements" applicable to medical opinion evidence. 20 C.F.R. § 404.1520c(d). The Ninth Circuit has yet to rule on whether the 2017 Regulations displaced the "germane reasons" standard for rejecting nonmedical source evidence. *M.P. v. Kijakazi*, 2022 WL 1288986, at *7 (N.D. Cal. Apr. 29, 2022). In the absence of controlling precedent, district courts in the Ninth Circuit have reached differing results. *Compare Mahnaz M. v. Kijakazi*, 2024 WL 21794, at *8 (S.D. Cal. Jan.

2, 2024) ("[T]he revised regulations plainly allow for the ALJ to render a decision on a plaintiff's disability claim without articulating findings regarding lay witness statements, so long as the witness testimony has been considered."); *Ramona J. R. v. Comm'r of Soc. Sec.*, 2024 WL 216571, at *5 (W.D. Wash. Jan. 19, 2024) ("From this Court's perspective, the regulations do not provide that the ALJ is free to disregard lay witness testimony, only that the ALJ is not required to articulate how [it was] considered [] according to the same requirements used in evaluating evidence from medical sources."); *Wendy J.C. v. Saul*, 2020 WL 6161402, at *12 n. 9 (D. Or. Oct. 21, 2020) (The 2017 Regulations "the ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony."); *Joseph M.R. v. Comm'r, Soc. Sec. Admin.*, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019) (The 2017 Regulations "do[] not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements.").[7]

The Court need not resolve the undecided issue here, because any error resulting from the ALJ's rejection of the nonmedical source statement was harmless. "Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness' testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony." *Thomas v. Comm'r, Soc. Sec. Admin.*, 2022 WL 292547, at *7 (D. Ariz. Feb.

---

[7] The prior judicial decision concluded differently on this issue. (AR 1373-1372). This is so because the caselaw demonstrating the issue is undecided in the Ninth Circuit arose after the prior judicial decision.

**MEMORANDUM DECISION AND ORDER - 15**

1, 2022) (citing *Caleb H. v. Saul*, 2020 WL 7680556, at *8 (E.D. Wash. Nov. 18, 2020);

*see also Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Here, the statements of Plaintiff's spouse and parent mirror Plaintiff's own

subjective symptom testimony in describing Plaintiff's symptoms, daily activities,

limitations, and abilities. (AR 259-266, 314-315, 1584).[8] As noted above, the ALJ

provided clear and convincing reasons for rejecting Plaintiff's subjective symptom

testimony. Those reasons apply equally to the nonmedical source statements.

Accordingly, any error by the ALJ in failing to articulate germane reasons for rejecting

the medical source statement was harmless.

Further, to the extent it is required, the ALJ provided legitimate reasons for

discrediting the nonmedical source statements. The Court notes that the prior judicial

ruling found error in the ALJ's failure to provide *any* discussion of the nonmedical source

statements. (AR 1373-1406). In contrast, the ALJ on remand explained how the

nonmedical source statements were considered, and the reasons for rejecting them. (AR

1307). For instance, in January 2020 Plaintiff's spouse reported that Plaintiff had

"recently been diagnosed with eosinophilic esophagitis or strictures throughout the

esophagus" causing trouble swallowing. (AR 315). The record reflects the esophageal

---

[8] The nonmedical source statements provide greater descriptive detail than Plaintiff's own functional report and testimony. However, all of the symptom statements consistently identify and describe the same functional limitations. The statements differ somewhat with regard to Plaintiff's use of a cane. Plaintiff's wife reported Plaintiff uses a cane daily. (AR 264). In contrast, Plaintiff stated he used a cane "rarely anymore," but during the hearing reported to using a cane. (AR 264, 1339-40). This discrepancy between the statements does not alter the outcome here, as Plaintiff's use of a cane is inconsistent throughout the record. As discussed above, the ALJ considered this evidence and explained his conclusions regarding the same, which are supported by substantial evidence.

**MEMORANDUM DECISION AND ORDER - 16**

diagnosis was made on October 29, 2019. (AR 1189, 1191). During the hearing on

October 12, 2022, Plaintiff similarly testified to having difficulty swallowing, choking,

and needing to throw up when eating. (AR 1347-48). The ALJ correctly determined that

Plaintiff never reported such a severity of restrictive symptoms relevant to difficulty

swallowing to medical providers during the period at issue – January 11, 2017 to

December 31, 2022. (AR 1307). Likewise, the ALJ reasonably found Plaintiff had not

reported instances of defecating on himself to medical providers during the period at

issue, contrary to the nonmedical source statements. (AR 1307). While there is evidence

of Plaintiff's esophageal and bowel issues, the ALJ's conclusion that the record does not

support the level of severity presented by the nonmedical sources was a reasonable

interpretation of the record. Therefore, the inconsistencies between the record and the

statements was a legitimate reason for rejecting the statements.

**3.       Medical Opinion Evidence**

Plaintiff argues the ALJ erred in evaluating the medical opinion evidence. (Dkt.

13, 18). Defendant maintains the ALJ considered the opinion evidence consistent with the

applicable regulations. (Dkt. 15).

**A.       Legal Standard**

Under the regulations governing an ALJ's evaluation of medical opinion evidence

for claims filed on or after March 27, 2017, such as here, the ALJ evaluates the

persuasiveness of the opinions based on several factors. 20 C.F.R. § 404.1520c(a). These

are: supportability, consistency, relationship to the claimant, specialization, and other

factors. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors in the evaluation

process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

     "Supportability means the extent to which a medical source supports the medical

opinion by explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*,

32 F.4th 785, 791-792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)).

"Consistency means the extent to which a medical opinion is 'consistent ... with the

evidence from other medical sources and nonmedical sources in the claim.'" *Id*. (quoting

20 C.F.R. § 404.1520c(c)(2)). The ALJ is required to articulate how persuasive they find

the evidence and explain how the supportability and consistency factors were considered.

*Id.*; 20 C.F.R. § 404.1520c(b)(2); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d

1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ

must provide some reasoning in order for us to meaningfully determine whether the

ALJ's conclusions were supported by substantial evidence."); *see also Bunnell v.*

*Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not

be forced to speculate as to the grounds for an adjudicator's rejection" of certain

evidence). The absence of either a supportability or consistency finding is not itself fatal

to an ALJ's evaluation of opinion evidence, because a finding as to either factors may

constitute a sufficient basis for the ALJ's finding regarding the persuasiveness of an

option if the ALJ's decision is supported by substantial evidence. *Woods*, 32 F.4th at 792-

94 & n. 4 (supportability and consistency are distinct factors that are treated separately).

     The ALJ may, but is not required to, explain how the other persuasive factors in

paragraphs (c)(3) through (c)(5) were considered. 20 C.F.R. § 404.1520c(b)(2). However,

when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other persuasive factors were considered. 20 C.F.R. § 404.1520c(b)(3). The ALJ's persuasiveness determination must be supported by substantial evidence. *Woods*, 32 F.4th at 787.

### B.    Mental Health Opinions

### i.    State Agency Consultants – Martin Seidenfeld, PhD and Barney Greenspan, PhD

Drs. Seidenfeld and Greenspan authored opinions dated October 17, 2018 and December 31, 2018. (AR 76-77, 88-89). Both doctors opined that Plaintiff had no limitations in the first and fourth "Paragraph B" functional areas, and mild limitations in the second and third Paragraph B functional areas.[9]

The ALJ found persuasive the state agency consultants' opinions that Plaintiff had mild limitations in the second Paragraph B functional area - his ability to interact with others. (AR 1306). The ALJ concluded the opinions were supported by their consideration of Plaintiff's mental health impairments, situational stressors, daily activities, and some of the normal mental status examination findings. The ALJ found the opinions persuasive as they were internally consistent and well-supported by a reasonable explanation and the available evidence. However, in contrast to the agency consultants,

---

[9] The "Paragraph B" criteria evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id.*

the ALJ found Plaintiff's complaints of mood swings, memory difficulties, and bouts of anger caused moderate limitations in the first, third, and fourth Paragraph B areas – understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or manage oneself. (AR 1306). The ALJ concluded that more restrictive limitations were inconsistent with the normal mental status findings, Plaintiff's daily activities, and lack of mental health treatment between January 2022 and July 2022.

Plaintiff argues the ALJ erred by failing to provide any reasoning or analysis for his evaluation of these opinions, and by not citing to the record. (Dkt. 13 at 8; Dkt. 18 at 2). The Court finds otherwise.

The ALJ on remand explained his reasoning for finding the consultants' opinions persuasive, which the Court finds is reasonably discernable when viewing the written decision in its entirety. *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (When determining whether a decision is supported by substantial evidence, courts "look[ ] to all the pages of the ALJ's decision."); *Brown-Hunter*, 806 F.3d at 492 (upholding an ALJ's decision where "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.").

The ALJ found the agency consultants' opinions were supported by their review of the available record and consideration of Plaintiff's mental health impairments, situational stressors, daily activities, normal mental status examination findings, reasonable explanation, and the available evidence. (AR 1306). The ALJ's conclusion is supported by substantial evidence. The opinions each provided an explanation, as

referenced by the ALJ, which discussed records from 2018 that reported mostly normal mental health findings, that Plaintiff saw improvement of his depression in with medication, and Plaintiff's daily activities. (AR 76-77, 89, 1306). The 2018 records were the most recent records available to the consultants at the time of their evaluations.

Earlier in the decision, the ALJ explained his reasoning for concluding Plaintiff's mental impairments caused moderate limitations in the first, third, and fourth Paragraph B areas and cited records supporting his reasoning. (AR 1298-99). The ALJ also analyzed Plaintiff's daily activities throughout the written decision and, in particular, in discussing the Paragraph B functional areas. (AR 1297-1300, 1302-04, 1306-07). Finally, the ALJ provided a detailed discussion of the record as it related to Plaintiff's mental health impairments, including the lack of treatment between January 2022 to July 2022. (AR 1303-1304). The ALJ's discussions of the record, daily activities, and lack of treatment are consistent throughout the decision and were incorporated into the ALJ's evaluation of the consultants' opinions.[10] The ALJ explained his reasons for finding the consultants' opinions persuasive, and his decision is supported by substantial evidence.

For these reasons, the Court finds the ALJ's discussion of the supportability factor satisfied the applicable regulations for evaluating medical opinions. *Woods*, 32 F.4th at

---

[10] On review, courts consider the entirety of the ALJ's decision in determining whether any reversable error occurred. The Court's consideration of the entire decision is not limited to its review of the ALJ's evaluation of a claimant's statements, contrary to Plaintiff's suggestion. (Dkt. 18 at 2); *see e.g. Melony V. v. O'Malley*, 2024 WL 710657, at * 8 (D. Idaho Feb. 21, 2024); *Gisler v. Comm'r of Soc. Sec. Admin.*, 2024 WL 208416, at * 3 (D. Ariz. Jan. 19, 2024); *Tami W. v. Comm'r Soc. Sec.*, 2022 WL 248148, at * 6 (W.D. Wash. Jan. 27, 2022).

792-94 & n. 4 (A finding as to either factor may constitute a sufficient basis to uphold the ALJ's persuasiveness finding where the decision is supported by substantial evidence.).

### ii.    Examining Consultant - Brad Levitt, PsyD

On November 29, 2017, Brad Levitt, PsyD, performed a mental status examination/psychological evaluation. (AR 730-734). Levitt opined that Plaintiff's impairments caused frustration, irritability, and depressed mood which limit his ability to perform job duties. (AR 733). Levitt concluded that Plaintiff's concentration was somewhat impaired; memory skills were overall good; adaptive functioning skills were overall moderately impaired; he had average level of intellectual functioning; and was capable of managing his own funds and making informed treatment decisions. (AR 734). Relevant here, Levitt found Plaintiff's depressed mood, irritability, and PTSD related anxiety "will likely impact his ability to function adaptively on a job over time in a consistent manner…" and that he would have "high levels of absenteeism." (AR 733).

The ALJ found Levitt's opinion unpersuasive. (AR 1306-07). Plaintiff argues the ALJ erred by failing to discuss the supportability and consistency factors; and by failing to consider Levitt's opinion that Plaintiff would have a high level of absenteeism. (Dkt. 13 at 8-9; Dkt. 18 at 2). The Court agrees.

The ALJ's decision did not address the supportability and consistency factors in evaluating the persuasiveness of Levitt's opinion as required by the applicable regulations. 20 C.F.R. § 404.1520c(b)(2). The ALJ makes no mention of either supportability or consistency in finding Levitt's opinion unpersuasive. (AR 1306-07). Rather, the ALJ articulated two reasons for rejecting Levitt's opinion. First, the question

of whether Plaintiff can engage in work activity is reserved for the Commissioner. Second, the opinion concerning Plaintiff's ability to concentrate, remember, adapt, or manage himself was vague and conclusory, and lacked specific function-by-function mental limitations in the work setting. The Court will address each of the ALJ's reasons below.

As to the first reason, the ALJ found Levitt's opinion unpersuasive with regard to whether Plaintiff could function in a job over time in a consistent manner because that was a question reserved for the Commissioner. (AR 1306). The Court finds no error in the ALJ's conclusion to the extent it relates to Levitt's opinion of Plaintiff's ability to perform regular or continuing work. Under the revised regulations, the ALJ is not required to provide any analysis about how they considered evidence on issues reserved to the Commissioner including, as relevant here, statements that the claimant is disabled, able to work, or able to perform regular or continuing work. 20 C.F.R. § 404.1520b(c)(3)(i).

However, Levitt's opinion that Plaintiff would have "high levels of absenteeism" was not an issue reserved to the Commissioner, contrary to Defendant's argument. (Dkt. 15 at 11); *see Christina K. v. Comm'r of Soc. Sec.*, 2019 WL 5784479, at *2 (W.D. Wash. Nov. 6, 2019) (finding opinion on absenteeism was not an issue reserved to the Commissioner). The ALJ therefore could not reject Levitt's opinion concerning absenteeism on that basis and, erred in doing so to the extent the decision can be read to have found as much.

**MEMORANDUM DECISION AND ORDER - 23**

Rather, the ALJ was required to address Levitt's opinion that Plaintiff would have "high levels of absenteeism." *See e.g. Joseph B. v. Saul*, 2020 WL 1915893, at *4 (E.D. Wash. Jan. 8, 2020) (finding the ALJ's failure to address the opined absenteeism was not harmless). In determining the RFC, the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. Here, the ALJ included a limitation in the RFC that Plaintiff would be absent from work up to one day per month. (AR 1300). That limitation appears to conflict with Levitt's finding that Plaintiff would have "high levels of absenteeism." (AR 733). While it is unclear whether "high levels of absenteeism" is more or less than one day per month, as stated in the RFC, without any comment from the ALJ regarding Levitt's opinion on absenteeism it is impossible for the Court to determine whether the ALJ rejected or simply ignored that portion of the opinion. *Brown-Hunter*, 806 F.3d at 492. The ALJ therefore erred in failing to discuss Levitt's opinion concerning absenteeism.

Defendant's contrary arguments that the ALJ properly discredited Levitt's opinion by finding high levels of absenteeism unpersuasive in light of frequent normal objective findings and the lack of medical treatment are improper *post hoc* reasons. (Dkt. 15 at 11). Again, the ALJ did not make any findings concerning Levitt's opinion regarding absenteeism. (AR 1306-07). The ALJ's discussion of absenteeism earlier in the decision relates to his evaluation of Dr. David's physical assessment, discussed below, not Levitt's mental status examination. (AR 1305). Indeed, David's opinion makes all the more clear that the error found here was harmful. Had Levitt's opinion concerning absenteeism been

found persuasive, it could have lent support to David's opinion and may have impacted the ultimate disability determination. Similarly, the normal objective findings and lack of medical treatment observed elsewhere in the decision that Defendant points to, were not reasons the ALJ gave for finding Levitt's opinion unpersuasive. (AR 1306-07). Because the reasons proffered by Defendant were not relied on by the ALJ in rejecting Levitt's opinion, nor are those reasons discernable from the decision, they are not a basis for upholding the ALJ's rejection of Levitt's opinion. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (Courts "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [the ALJ] did not rely.").

As to the ALJ's second reason for discrediting the opinion, the ALJ found Levitt's opinion of Petitioners ability to concentrate, remember, adapt, or manage himself, unpersuasive because it was vague and conclusory as it lacked specific function-by-function mental limitations. (AR 1307). The Court finds this was error because the ALJ's reasoning fails to explain how the supportability and consistency factors were considered, if at all. 20 C.F.R. § 404.1520c(c)(b) (ALJ must "articulate ... how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors.").

There is no requirement that a doctor's opinion provide specific function-by-function limitations for it to be well-supported or consistent. *See e.g., Phillip S.C. v. Comm'r of Soc. Sec. Admin.*, 2023 WL 2911871, at * 5 (D. Or. April 12, 2023); *but see Matthew M. v. Comm'r of Soc. Sec. Admin.*, 2023 WL 3966402, at * 2 (W.D. Wash. June

13, 2023) (holding an ALJ may reject a medical opinion because it was vague as to what the claimant could do on a function-by-function and sustained basis). Rather, supportability looks to whether and to what degree the medical source presents objective medical evidence and explanations to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). Thus, the ALJ's conclusory finding that Levitt's opinion regarding Plaintiff's functional mental limitations was unpersuasive because it was vague and conclusory and did not provide specific function-by-function mental limitations failed to explain how the ALJ considered the supportability and consistency factors as required by the regulations.[11]

The ALJ's errors in evaluating Levitt's opinion were harmful as the Court cannot confidently conclude that the errors were inconsequential to the ultimate disability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Had the ALJ adopted Levitt's opinion of high levels of absenteeism, the disability determination likely would have been different given the testimony of the vocational expert. (AR 1330-31, 1334). Because the ALJ did not evaluate the supportability and consistency factors and did not address Levitt's opinion regarding absenteeism, it is

---

[11] The Court recognizes that an ALJ may properly find an opinion unpersuasive because it is vague and conclusory. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings."). The error found here is the ALJ's failure to explain how he considered the supportability and consistency factors in reaching that conclusion, if at all.

impossible to discern the ALJ's reasoning and determine whether the decision is supported by substantial evidence.

Indeed, there are plausible grounds for finding Levitt's opinion persuasive as well as unpersuasive. Levitt provided a lengthy narrative of his behavioral observations and mental status examination, a preliminary diagnostic impression, functional limitations, and a conclusion. (AR 732-34). The opinion then provided functional limitations; recommendations; and a concluding statement finding Plaintiff's impairments somewhat limited his ability to concentrate and adapt, and that he was likely to have high levels of absenteeism. Levitt concluded Plaintiff's impairments limited his functional abilities. Within those discussions are some support for finding the opinion persuasive. Yet, there are other bases for concluding the opinion is unpersuasive. These are matters for the ALJ to resolve in the first instance. Accordingly, the decision of the Commissioner must be reversed and remanded for further proceedings.

### iii.   Treatment Provider – Courtney Combe, PA-C

On July 29, 2019, Plaintiff's psychiatric treatment provider, Courtney Combe PA-C, authored a letter reporting Plaintiff's diagnoses as: generalized anxiety disorder, major depressive disorder, and PTSD. (AR 915). Combe stated that Plaintiff struggled daily with anxiety and depression, and had chronic pain. Combe reported Plaintiff was "more stable" with medication management, but still struggled with controlling his anxiety and PTSD symptoms. Combe opined that "[a]s a result of his physical and mental illness, [Plaintiff] would have difficulty finding and keeping employment." (AR 915).

The ALJ found Combe's opinion that Plaintiff was unable to find and keep employment unpersuasive, as it lacked function-by-function mental limitations in the work setting and addressed a question reserved for the Commissioner. (AR 1307). Plaintiff contends Combe's letter, when combine with Levitt's opinion, supports a finding that Plaintiff would incur high levels of absenteeism. (Dkt. 13 at 9). Consequently, Plaintiff argues the RFC is not supported.

The Court finds that the ALJ properly determined Combe's letter addressed questions reserved for the Commissioner. 20 C.F.R. § 404.1520b(c)(3)(i). The letter offers no opinions concerning Plaintiff's functional limitations. (AR 915). And, contrary to Plaintiff's suggestion, Combe did not offer any information or opinion concerning absenteeism. (Dkt. 13 at 9). For these reasons, the Court finds no harmful error in the ALJ's consideration of Combe's letter.

### C.  Physical Medical Opinions[12]

#### i.  Primary Care Provider - Ryan David, D.O.

David authored a short letter dated July 16, 2019 stating Plaintiff was "not currently able to engage in any employment" due to injuries sustained during previous military employment and ongoing pain. (AR 913). The ALJ discredited the letter as vague, conclusory, and concerning a question reserved for the Commissioner. (AR 1307). The Court finds the ALJ properly rejected David's 2019 letter as it addressed Plaintiff's

---

[12] Plaintiff does not contest the ALJ's evaluation of the state agency physical medical consultants' opinions. (Dkt. 13). Plaintiff has therefore waived any assignment of error as to those opinions. *Carmickle*, 533 F.3d at 1161, n. 2. Consequently, the Court will not address the state agency opinions.

ability to engage in work, which is a question reserved for the Commissioner. 20 C.F.R. §
404.1520b(c)(3)(i).

Next, David completed a physical assessment dated January 2, 2020, opining that
Plaintiff could work two hours in day, would be absent six days per month, and assigned
other limitations in Plaintiff's ability to stand/walk, sit, carry, climb, balance, push/pull,
and certain environmental limitations. (AR 1178-1181).[13] David completed a second
physical assessment dated October 6, 2022. (AR 1303-1806). David opined that Plaintiff
could work four hours in a day and would likely be absent from work four days per
month. David concluded Plaintiff could stand/walk a total of two hours in a workday, but
zero hours without interruption; could sit for a total of four hours, but for only one hour
without interruption; and was limited in his ability to carry more than thirty pounds all
due to his spinal fusion. David further opined that Plaintiff had several postural
limitations due to shoulder, knee, and spine impairments; and had some limits with
reaching, pushing/pulling, and certain environmental restrictions. David noted that

---

[13] Plaintiff assigns error to the ALJ's failure to address David's 2020 opinion. (Dkt. 13 at 12; Dkt.
18 at 3-4). Under the regulations, "when a medical source provides multiple medical opinion(s) or prior
administrative medical finding(s), we will articulate how we considered the medical opinions or prior
administrative medical findings from that medical source together in a single analysis using the factors
listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate
how we considered each medical opinion or prior administrative medical finding from one medical source
individually." 20 C.F.R. § 404.1520c(b)(1). While the regulations allow an ALJ to address multiple
opinions from a single source in one analysis, the ALJ here made no mention of David's 2020
assessment. The Court finds no error in the ALJ's consideration of David's opinions in a single analysis.
However, because the decision is silent as to the existence of the 2020 assessment, it is unknown whether
the ALJ considered both of David's assessments in his analysis. To the extent this was error, the ALJ
should address it on remand.

fatigue also contributed to Plaintiff's ability to perform fulltime work due to his mental health referral.

The ALJ found portions of David's opinion persuasive, and other portions unpersuasive. (AR 1304-05). Plaintiff argues the ALJ's evaluation of David's opinion was unsupported by the evidence. (Dkt. 13 at 10-11). Defendant maintains the ALJ properly evaluated the opinion and cited records supporting his decision. (Dkt. 15 at 13). The Court finds the ALJ properly discussed the supportability and consistency factors in evaluating the persuasiveness of David's opinion.

First, the ALJ found persuasive David's opinions as to Plaintiff's ability to stand and walk for two hours in a workday; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, and crouch; and need to avoid exposure to extreme cold and vibrations. The ALJ explained that this portion of the opinion was persuasive as it was supported by David's reliance on Plaintiff's subjective pain allegations, prior lumbar and right shoulder surgeries, and Plaintiff's left shoulder impairment. (AR 1304). The ALJ then concluded that more restrictive limitations were inconsistent with the objective medical evidence and activities of daily living. (AR 1301-05).

The Court finds the ALJ's conclusion that this portion of David's opinion was persuasive satisfied the regulatory requirements and was supported by substantial evidence. The ALJ discussed both the internal supportability and the external consistency of the opinion. (AR 1304-05). The ALJ's reasoning was consistent with his evaluation of Plaintiff's symptom statements concerning back, shoulder and hand pain, which the ALJ found to be somewhat supported by the objective medical evidence. (AR 1301-02). As

determined above, the ALJ properly evaluated Plaintiff's symptom statements. The ALJ incorporated those findings into his discussion of the opinion evidence and persuasiveness factors. *Molina*, 674 F.3d at 1121 ("[W]e must uphold it if the agency's path may reasonably be discerned."). The ALJ cited the same records relied on in discussing Plaintiff's symptom statements relevant to the objective medical evidence and daily activities, which also support the ALJ's evaluation of the opinion evidence. (AR 1305). The ALJ assigned an RFC for sedentary work with limitations mostly consistent with David's opinion concerning standing and walking; postural activities; lifting, carrying, pushing/pulling, and reaching; and environmental restrictions. (AR 1300).

Next, the ALJ found unpersuasive the portions of David's opinion regarding Plaintiff's ability to work four hours per day; sit four hours in a workday; never crawl; constantly handle and finger; no limits on unprotected heights and moving mechanical parts; and would be absent four days per month. (AR 1305). Those portions of the opinion, the ALJ determined, were unsupported because David relied heavily on Plaintiff's subjective complaints and did not fully consider the normal physical examination findings during the relevant period. Further, the ALJ concluded these additional limitations were inconsistent with the objective medical findings and Plaintiff's daily activities during the period under review. Instead, the ALJ found Plaintiff could frequently handle and finger bilaterally due to bilateral shoulder pain; and would be off task five percent of a workday and would be absent from work one day per month due to back pain and treatments for other impairments. The ALJ therefore assigned RFC limitations that differed from David's opinion with regard to: handling and fingering

**MEMORANDUM DECISION AND ORDER - 31**

(frequent); the number of hours each day Plaintiff can work (no limit); number of absences (once per month); and number of hours Plaintiff can sit during a workday (six hours). *Compare* (AR 1300, 1803-06).

The Court finds the ALJ's decision concluding this portion of David's opinion was unpersuasive properly considered the persuasiveness factors and was supported by substantial evidence. The ALJ addressed both the supportability and the consistency factors, and his reasoning was consistent with his evaluation of Plaintiff's symptom statements. (AR 1304-05). Specifically, the ALJ's finding that Plaintiff's statements were not wholly supported by the normal physical examination findings, activities of daily living, and lack of treatment. (AR 1302-03). As determined above, the ALJ properly evaluated Plaintiff's symptom statements and incorporated those findings into his discussion of the opinion evidence. *Molina*, 674 F.3d at 1121. The ALJ reasonably concluded that David's opinion of greater limitations with sitting, part-time work, postural and manipulative activities, environmental restrictions, and absenteeism were unpersuasive as they were not supported by Plaintiff's symptom statements or the normal physical examination findings; and were inconsistent with objective medial findings and Plaintiff's daily activities.[14] For these reasons, the Court finds the ALJ properly considered the supportability and consistency factors in concluding this portion of David's opinion was unpersuasive.

---

[14] On remand, the ALJ should reevaluate David's opinion as necessary depending on the persuasiveness of the other opinion evidence - for instance, Levitt's opinion concerning absenteeism. The Court makes no determination here as to the persuasiveness of the medical opinions nor the level of absenteeism Plaintiff's symptoms may or may not cause.

**MEMORANDUM DECISION AND ORDER - 32**

### ii.      Examining Consultant - Michael Sant, M.D.

On December 1, 2017, Sant completed a medical disability determination finding Plaintiff was able to walk short distances with the use of a cane, had difficulty with prolonged standing or walking, but had no limitations to sitting. (AR 741). As to his upper extremities, Sant found Plaintiff had difficulty with heavy lifting or carrying; handling, gripping, or twisting with the left hand; reaching above shoulder level on the left; and manipulation of objects. As to his lower extremities, Sant concluded Plaintiff had difficulty with repetitive squatting, kneeling, stairs, climbing, bending, twisting, stooping, and heavy pushing or pulling. Sant stated Plaintiff's lifting restrictions were in the light duty range, he would require frequent position changes, and would not tolerate prolonged low intensity vibration or exposure to extreme cold temperature. (AR 742).

The ALJ found Sant's opinion partially persuasive. (AR 1305-06). Plaintiff argues the ALJ erred in evaluating the persuasiveness of Sant's opinion, and by concluding Sant's opinion was inconsistent with David's opinion. (Dkt. 13 at 12-13; 18 at 4). Defendant maintains the ALJ properly evaluated the opinion. (Dkt. 15 at 14-14).

The Court finds the ALJ considered the persuasiveness factors and explained his decision concerning Sant's opinion as required by the regulations. First, the ALJ found persuasive Sant's opinion regarding Plaintiff's fine manipulation limitations, as they were supported by Sant's consideration of Plaintiff's history of bilateral hand impairment and more restrictive limitations were inconsistent with daily activities. (AR 1305-06). Plaintiff cites error in the ALJ's findings that the opinion's manipulative limitations were persuasive while other opined limitations were deemed unpersuasive as vague, despite

Sant's use of the same terms to describe both limitations. (Dkt. 13 at 12-14; Dkt. 18 at 4). The Court finds otherwise.

The ALJ explained his reasoning for finding the manipulative limitations persuasive, which the Court finds was supported by substantial evidence. Sant's opinion details Plaintiff's history and objective findings related to his hand and upper extremity limitations, which the ALJ found support manipulative limitations. (AR 1305). The ALJ then identified daily activities that were inconsistent with imposing more restrictive manipulations. (AR 1306). That the ALJ arrived at differing conclusion as to certain limitations despite the opinion's use of similar descriptive terms, does not amount to error where, as here, the ALJ explained the bases for the decision.

Next, the ALJ found unpersuasive Sant's opinions that Plaintiff could work at the light exertional level; needed to occasionally use a cane; and his abilities to stand, walk, sit, squat, kneel, and climb. (AR 1306). The Court finds the ALJ properly concluded that Sant's opinion regarding Plaintiff's ability to engage in work at the light exertional level was inconsistent with Hay's opinion, but erred in so finding as to David's opinion. (AR 1306). Sant concluded that Plaintiff could perform lifting in the light duty range. (AR 742). In contrast, Hay opined that Plaintiff was better suited for sedentary work. (AR 392). Thus, the ALJ correctly concluded that the opinions of Sant and Hay were inconsistent. However, David opined that Plaintiff's ability to walk, stand, and sit were below the sedentary exertional level. (AR 1803-04) (David opining Plaintiff could stand/walk for two hours and sit for four hours during a workday). The ALJ therefore incorrectly stated that David opined Plaintiff could perform sedentary work. However,

**MEMORANDUM DECISION AND ORDER - 34**

any error in this regard was harmless because the limitations expressed in David's opinion were inconsistent with Sant's opinion, even with the ALJ's use of the incorrect exertional limitation. The inconsistency between David and Sant's opinions of Plaintiff's functional abilities was a legitimate basis for finding Sant's opinion unpersuasive. Nevertheless, the ALJ should address this discrepancy on remand as necessary.

The ALJ's next conclusion finding Sant's opinion regarding Plaintiff's need to use a cane was unpersuasive is well-explained, supported by substantial evidence, and uncontested by Plaintiff. The record concerning Plaintiff's use of a cane was inconsistent with Sant's opinion, as discussed above. Therefore, the Court finds no error in the ALJ's conclusion.

Last, the ALJ rejected Sant's opinion concerning Plaintiff's ability to sand, walk, sit, squat, kneel, and climb because it was vague and without specific limitations concerning these activities in the work setting. (AR 1306). This conclusion appears to go to the supportability factor – e.g., that the opined limitations are internally unsupported because they lack specific limitations for these activities in the work setting. However, the ALJ did not articulate such a finding. Thus, as with Levitt's opinion discussed above, the ALJ erred by failing to explain how the supportability and consistency factors were considered. 20 C.F.R. § 404.1520c(c)(b).

On remand, the ALJ should reevaluate Sant's opinion as necessary to address these discrepancies.

### iii.   Veterans Administration Examiner - Tammy Hay, D.O.

Hay completed a disability benefits questionnaire for the Veterans Administration dated January 10, 2017. As relevant to Plaintiff's arguments here, Hay reported that Plaintiff missed approximately fifty days of work due to his back conditions with sciatic neuropathy. (AR 370); (Dkt. 13 at 14). The ALJ did not comment on that finding in the decision. (AR 1304). It is possible that the ALJ did not address the finding because he determined it was a matter reserved for the Commissioner or that the finding was not an opinion concerning absenteeism. In either case, this is a matter for the ALJ to decide in the first instance. Because this matter will be remanded for other reasons, the ALJ should reevaluate Hay's opinion on remand if necessary.

### 4.   Remand For Additional Proceedings is Appropriate

Plaintiff requests remand for an immediate award of benefits. (Dkt. 13). The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). In general, when the Court reverses an ALJ's decision "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Harman*, 211 F.3d at 1179.

In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Treichler*, 775 F.3d at 1100-01; *Garrison*, 759 F.3d at

1020. Under this analysis, the Court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all three requirements are met, the decision whether to remand a case for additional evidence or to award benefits is left to the court's discretion. *Treichler*, 775 F.3d at 1101–02. Where the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); *Harman*, 211 F.3d at 1179-81.

Upon a careful review, the Court finds the evidence in this case does not conclusively establish Plaintiff is disabled under the Social Security disability regulations. Rather, the Court finds that further administrative review could remedy the errors found herein. Additionally, there is evidence in the record that may support a finding that the functional limitations resulting from Plaintiff's impairments could be accounted for in the RFC assessment and would not prevent Plaintiff from engaging in substantial gainful activity. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (Remand is appropriate "when the record as a whole creates serious doubts as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). Because the evidence must be weighed and evaluated properly by the ALJ in the first instance, remand for an immediate award of benefits is inappropriate. *Treichler*, 775 F.3d at 1101 (remand for proceedings rather than for an immediate award of benefits serves a

useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities."). For these reasons, the Court will reverse and remand the ALJ's decision for further administrative proceedings. The ALJ should reassess the entire record in making the disability determination on remand.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) The Complaint (Dkt. 1) is **GRANTED**;

2) This action will be **REMANDED** to the Commissioner for further proceedings consistent with this opinion; and

3) This Remand is considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: March 18, 2024

Honorable Debora K. Grasham
United States Magistrate Judge